UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Rose Marie Lawless, | Case No. 1:19-cv-01017 |
| *Plaintiff*, | Judge Jeffery P. Hopkins |
| vs. | |
| Trinity Financial Services, LLC, | |
| *Defendant*. | |

**OPINION AND ORDER**

This civil case is before the Court on a motion for summary judgment filed by Defendant Trinity Financial Services, LLC ("Trinity Financial") (Doc. 37), the Response in Opposition filed by Plaintiff Rose Marie Lawless (hereinafter referred to as "Plaintiff") (Doc. 40), and the Reply to Response filed by Trinity Financial. (Doc. 42). As a threshold matter, it is with a sense of weary familiarity that the Court addresses this case. Counsel for Plaintiff are the same attorneys, who two years ago, asserted nearly identical claims and theories for relief in a complaint filed in this Court. Those same arguments dismissed on summary judgment, back then, are being resurrected anew. Once again, this Court is being asked to resolve questions of law that are redundant; and with similar equanimity and dispatch, this Cour reaches similar answers.

For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 37.) and **DISMISSES** Plaintiff's Complaint (Doc. 1) **WITH PREJUDICE**.

**I.     BACKGROUND**

Plaintiff owns a home located in Cincinnati, Ohio. Doc. 36-1, PageID 652. In August 2003, she executed a second mortgage on the property to secure a loan for $28,000 (the

"Second Mortgage"). *Id*. At some point in time, Plaintiff stopped making payments on the Second Mortgage. Doc. 1-2, PageID 22–24. She alleges, however, that in 2014 a third-party servicer, LandHome Financial Services, Inc. ("LandHome"), approved her for a settlement agreement whereby she could resolve the entire debt on the Second Mortgage for less than what she owed. Doc. 1, PageID 4. According to Plaintiff, the first settlement installment payment she sent LandHome on the Second Mortgage was never cashed by the company. *Id*., at PageID 5 at ¶ 25. Also, according to Plaintiff, she continued communicating with LandHome into 2015, but never made any additional payments towards the Second Mortgage on the agreed settlement amount because the parties never resolved the issue of the first uncashed payment. *Id*. at ¶ 26.

At the end of 2015, however, LandHome notified Plaintiff that the Second Mortgage was being transferred to Trinity Financial and that Trinity Financial would begin servicing her account. Doc. 1-3, PageID 26. Trinity Financial describes itself as "a company that purchases pools of non-performing second mortgages with a goal of converting those to performing loans through negotiated short term payoff arrangements or lump sum payoffs." Doc. 37, PageID 858. Trinity Financial's business model further consists of filing "complaints to foreclose on non-performing mortgages where a payoff is not possible." *Id*.

Trinity Financial worked with two debt collectors to retrieve Plaintiff's unpaid balance on the Second Mortgage. The first collector sent Plaintiff three default notices: the first in August 2017, the second in September 2017, and the third in November 2017. Doc. 39-10, PageID 1188–1209. The November notice informed Plaintiff that foreclosure would be recommended if she failed to respond. *Id*. Plaintiff failed to respond to all three notices, and two months later in January 2018, Trinity Financial's second debt collector sent Plaintiff a

final notice informing her that Trinity Financial intended to accelerate the full amount of the debt owed on the Second Mortgage if she did not cure her default within 30 days. Doc. 37, PageID 905.  Plaintiff admits to receiving each of these notices, but deliberately did not respond or take any further action until November 2018 when Trinity Financial, as promised by its notices, filed a foreclosure action in state court. Doc. 36, PageID 609–14.

In response to the foreclosure action, in December 2018, Plaintiff hired the attorneys representing her in the current lawsuit.  Her counsel then sent Trinity Financial three letters requesting information ("RFIs") related to the Second Mortgage and a subsequent notice of error ("NOE") based on Trinity Financial's purported procedural violations in failing to provide the alleged statutorily mandated information Plaintiff requested through her attorneys. Doc. 40-1, PageID 1258–61. [1]

---

[1] Plaintiff's Complaint states that the action "is brought in part to enforce regulations promulgated by the Consumer Financial Protection Bureau ("CFPB") that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.35 of Regulation X." Doc. 1, PageID 2 at ¶ 8. The Complaint further alleges unartfully that Trinity Financial committed "procedural violations" when responding to Plaintiff's request for more information or RFIs and NOE concerning Plaintiff's debt on the Second Mortgage.  However, Plaintiff's views on the regulations relied upon in the Complaint are not entirely accurate.

12 C.F.R. § 1024.35(a) states that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. A notice on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a notice of error. A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request."

The CFPB's website also offers an "Official Interpretation" of § 1024.35(a). In short it provides that "[a] servicer should not rely *solely* on the borrower's description of a submission to determine whether the submission constitutes a notice of error under §

Finding Trinity Financial's response inadequate, Plaintiff filed the instant Complaint seeking monetary relief and attorney's fees under various federal and state consumer protection laws. The Complaint alleges Trinity Financial violated five of those laws, including the Real Estate Settlement Procedures Act ("RESPA"); the Truth in Lending Act ("TILA"); the Fair Debt Collections Practices Act ("FDCPA"); the Ohio Residential Mortgage Lending Act ("RMLA"); and the Ohio Consumer Sales Practices Act ("OCSPA"). Each of the claims in Plaintiff's Complaint are based upon her allegation that Trinity Financial failed to respond to the four letters that she sent through her attorneys requesting information related to her Second Mortgage. Doc. 1; Doc. 37, PageID 861. Plaintiff seeks recovery from Trinity Financial for the costs and fees associated with having to hire attorneys to defend against the state court foreclosure proceedings and to send the notice of error and requests for information letters back in December of 2018. Doc. 1, PageID 7. Finally, Plaintiff asks the Court to award additional monetary relief based on the alleged emotional harm brought on by her having to seek compliance by Trinity Financial with the various consumer protection statutes referenced in the Complaint. *Id*.

---

1024.35(a), an information request under § 1024.36(a), or both." https://www.consumerfinance.gov/rules-policy/regulations/1024/35/. (Emphasis added.).

Here, Trinity Financial responded to Plaintiff's alleged "Notice of Error" or NOE stating accurately that it had no obligation to respond to the purported "Requests for Information" or RFIs because the requests and the purported notice of error were improper under § 1024.35 and § 1024.36, respectively. https://www.consumerfinance.gov/rules-policy/regulations/1024/36/.

## II. STANDARD OF REVIEW

Trinity Financial now seeks summary judgment for the purpose of dismissing Plaintiff's Complaint. "The 'party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The non-moving party, however, cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (bracket and emphases omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). In other words, the dispute must be "genuine" (*i.e.*, supported by evidence) and go to a "material fact" (*i.e.*, a fact that could matter to the outcome).

The role a court must play when presented with a motion for summary judgment is well defined. Ostensibly, after reviewing all the cited evidence, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). In making that determination, though, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

### III. LAW AND ANALYSIS

#### A. Summary Judgment Is Appropriate Because Plaintiff Lacks Article III Standing.

"Whether a party has standing is an issue of the court's subject matter jurisdiction." *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). The "irreducible constitutional minimum" of standing has three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that [injury must be] fairly traceable to the challenged conduct of the defendant, and (3) [that injury must be] likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (quoting, in part, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

"The plaintiff bears the burden of establishing [all three elements of] standing." *Lyshe*, 854 F.3d at 857. She must support each element "in the same way as any other matter on which the plaintiff bears the burden of proof, that is, with the manner and degree of evidence required at successive stages of the litigation." *Schickel v. Dilger*, 925 F.3d 858, 865 (6th Cir. 2019) (quoting *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459 (6th Cir. 2014)) (internal quotations omitted). Here, because the case has reached the summary judgment stage, Plaintiff "can no longer rest on . . . mere allegations" and "must set forth evidence of specific facts that support standing." *Morgan v. LVNV Funding*, No. 21-12967, 2023 WL 5808365, at *2 (E.D. Mich. 2023) (quoting *Lujan*, 504 U.S. at 560–61).

Injury-in-fact is the "[f]irst and foremost" element of the standing inquiry. *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019). Accordingly, to satisfy the standing requirements and pursue claims for federal and state statutory violations, Plaintiff must point

to evidence that demonstrates "either that the procedural harm itself is a concrete injury of the sort traditionally recognized or that the procedural violations caused an independent concrete injury." *Ward v. NPAS, Inc.*, 63 F.4th 576, 580 (6th Cir. 2023) (citations omitted). Plaintiff has not demonstrated either of those two things here.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). Concreteness refers to a harm that is "real, and not abstract." *Id*. (citation and internal quotation marks omitted). Congress has the power to identify and define intangible injuries by statute that would not otherwise be actionable in federal court. *Lujan*, 504 U.S. at 578. However, this authority is limited by Article III's requirement that there be some concrete injury even in the context of a statutory violation. *Spokeo*, 136 S. Ct. at 1549; *see also Lyshe*, 854 F.3d at 858 (emphasizing that Congress' power to create intangible injuries "does not eliminate the requirement that a plaintiff actually suffer harm that is concrete.")

### i. The costs incurred pursuing enforcement are not a concrete injury sufficient to establish standing.

As hinted towards earlier by this Court, Plaintiff's Counsel two years ago, in a similar case titled *Board v. Union Sav. Bank*, No. 1:21-cv-149, 2022 U.S. Dist. LEXIS 74487 (S.D. Ohio Apr. 25, 2022), brought nearly identical claims against another mortgage holder who was ultimately granted summary judgment. In *Board*, the plaintiff alleged "RESPA and TILA liability entirely on [the defendant's] failure to respond to [its] NOEs…and its delayed responses to RFIs… [the plaintiff sought] damages based on (1) the expense of sending… [the letters] and (2) her 'stress, anxiety, and anger' while corresponding with [the defendant.]" *Id*. at 6. The *Board* Court concluded that the plaintiff "lack[ed] standing to pursue her claims

7

against [the defendant mortgagee]" because she did not "[suffer] a concrete injury-in fact." *Id.* at 16–17. Here, Plaintiff argues that she has standing because she "alleges not only violations of RESPA and TILA but also violations [of] the FDCPA, RMLA, and OCSPA[,] which should on its face be enough for this Court to distinguish *Board*." Doc. 40, PageID 1250–51. However, Plaintiff's reliance on these three additional consumer protection statutes to confer standing is misplaced.

Similar to *Board*, the gravamen of Plaintiff's Complaint in this case seeks recovery under a variety of federal and state statutes for her "legal fees and expenses in [preparing] and mailing the NOE" due to Trinity Financial's alleged "willful failure to respond to the three RFIs [and] willful failure to respond to the NOE." Doc. 40, PageID 1251. But as Trinity Financial correctly points out, "regardless of which statute[s] [Plaintiff] cites, she failed to demonstrate a concrete injury that would provide her standing to prosecute her claims (emphasis omitted)." Doc. 42, PageID 1337. Again, "[f]ollowing the Sixth Circuit's instruction, this Court cannot find that Plaintiff has established standing merely by paying her lawyers to send letters on her behalf." *Board*, 2022 U.S. Dist. LEXIS 74487, at *11 n.1 (citing *Ward v. Nat'l Patient Account Servs. Sols.*, 9 F.4th 357 (6th Cir. 2021)).

The same principles that operated in *Board* apply here also. Even though Plaintiff in this case has cited and is relying on additional statutory authority than previously considered by the court in *Board*, she has still not shown any concrete injury. And the act of merely paying attorneys to send letters, as has already been determined in *Board*, will not suffice to establish standing.

8

> ii. **Plaintiff's emotional harms are not concrete injuries sufficient to establish standing.**

In a separate attempt to show concrete injury, Plaintiff points to "all of the stress that I've had from this[.] I have diabetes . . . I do everything I think to keep it under control. They say stress bothers it and makes it worse . . . [t]he stress [and] depression off and on . . . of course, [are] going to cause health issues[.]" Doc. 36, PageID 620; Doc. 40, PageID 1255. She further alleges injuries from all "[t]he embarrassment and nonstop phone calls where people" contacted Plaintiff to express interest in her home after Trinity Financial listed it for foreclosure following her default on the Second Mortgage. Doc. 40, PageID 1255.

The Sixth Circuit has said, however, that "a bare allegation of anxiety is not a cognizable, concrete injury." *Garland v. Orlans, PC*, 999 F.3d 432, 439–40 (6th Cir. 2021). And "general emotional 'harm,' no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes." *Buchholz v. Tanick*, 946 F.3d 855, 861 (6th Cir. 2020) (quoting *Humane Soc. of U.S. v. Babbitt*, 46 F.3d 93, 98, 310 U.S. App. D.C. 228 (D.C. Cir. 1995)); *see also Humane Soc. of U.S.*, 46 F.3d at 98 (holding that claims of "sleeplessness, depression, and anger" were insufficient to create an injury-in-fact for standing purposes).

Indeed, as the Sixth Circuit explained in *Garland*, a generalized statement of anxiety is "an intangible harm without a close relationship to a harm that has traditionally been regarded as providing [standing] for a lawsuit." 999 F.3d at 439. As Trinity Financial points out, *Garland* requires that the underlying conduct giving rise to any alleged emotional harm must be "extreme" or "outrageous" to confer standing. *Id.*; Doc. 37, PageID 870. No such showing of extreme or outrageous emotional harm has been presented in this case. Allegations that Trinity Financial committed "bare procedural [violations of the consumer protection laws]," that resulted in Plaintiff experiencing anxiety, depression, embarrassment,

stress, or some other form of emotional loss, without evidence of extreme or outrageous conduct on its part, does not rise to the kind of concrete injury cognizable under the rigorous *Gardland* standard. *Id.*

The Court also finds persuasive Trinity Financial's argument that Plaintiff has failed to establish another critical element of standing: traceability. There is no dispute that Plaintiff defaulted on the Second Mortgage and that she suffered from a variety of preexisting health conditions. Plaintiff fails to point to any evidence, however, which shows that her injuries are in fact "fairly traceable" to the challenged conduct on Trinity Financial's part. Notwithstanding, the Court need not reach the element of traceability because it "is persuaded that Plaintiff cannot establish that her emotional distress constituted an injury-in-fact." *Board*, 2022 U.S. Dist. LEXIS 74487, at *16. At bottom, Plaintiff lacks standing to pursue her claims against Trinity Financial because she has not in fact suffered a cognizable concrete injury.

Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** Doc. 37, PageID 873. Plaintiff's federal statutory claims, RESPA, TILA, and the FDCPA, are therefore dismissed **WITH** PREJUDICE. Doc. 1 (Counts One, Two, and Three). [2]

---

[2] Courts have recognized that, in "extraordinary circumstances," dismissal with prejudice based on a plaintiff's lack of standing may be appropriate. *Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 11 (6th Cir. 2018). In "unique" instances where there is "no pleading defect to cure that would confer standing," dismissal with prejudice may be warranted. *Stehrenberger v. JPMorgan Chase Bank, N.A.*, No. 2:12-cv-874, 2012 WL 5389682, at *6 (S.D. Ohio Nov. 2, 2012). The Court concludes that this is one of those unique instances where this exception applies. The standing defect presented here is unlikely to be curable. The depositions, affidavits, and other materials included in the record before this Court clearly demonstrate that Plaintiff does not have any concrete injuries that are cognizable under the law of constitutional standing. Costs, attorney's fees, and emotional harm incurred while defending against a foreclosure action are not the sorts of injuries that confer standing on a plaintiff seeking to recover damages against a mortgage company under the federal and state consumer laws relied upon in this case. Indeed, a careful review of

## B. The Parties' Remaining Claims Must Be Resolved In State Court.

"The Supplemental Jurisdiction statute, 28 U.S.C. § 1367, enables federal district courts to entertain claims not otherwise within their adjudicatory authority when those claims 'are so related to claims . . . within [federal-court competence] that they form part of the same case or controversy.'" *Artis v. D.C.*, 583 U.S. 71, 74 (2018) (quoting 28 U.S.C. § 1367(a)). Included within the supplemental jurisdiction authority bestowed upon district courts are state-law-based claims and counterclaims "brought along with federal claims arising from the same episode." *Id.*; *Watson v. Cartee*, 817 F.3d 299, 303 (6th Cir. 2016). The supplemental jurisdiction statute, however, is not a mandatory command. "A district court *may*... dismiss the related state claims if there is a good reason to decline jurisdiction." *Artis*, 583 U.S. at 74. (citing 28 U.S.C. § 1367(c)(1), (2), and (4) (emphasis added)). Moreover, Section 1367(c) recognizes that a district court has discretion to also dismiss a state law counterclaim "if . . . the district court has dismissed all claims over which it has *original jurisdiction* (emphasis added)." 28 U.S.C. § 1367(c)(3). That discretion is informed by "the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).³

---

Plaintiff's own deposition testimony demonstrates that it is highly unlikely that she could ever amend her complaint such that she could raise allegations sufficient to confer standing in this or any other court. Doc. 36, PageID 620–26; *See B. & V. Distrib. Co. v. Dottore Companies, LLC,* 278 F. App'x 480, 488 n.7 (6th Cir. 2008) ("dismissal with prejudice is appropriate…because there is no prospect that [plaintiff] may be able to cure the defects in his claims by pursuing them in some other court…[r]ather, the very same flaws that defeated his claims in this case would continue to exist in any other forum in which he sought to pursue them.")

³ Plaintiff initiated this action in November 2019. Doc. 1. Subsequently, the case was reassigned to another district judge in November 2020, and then to the undersigned in

Because this Court dismissed each of the claims asserted in Plaintiff's Complaint under the federal statutes for lack of standing, or based on lack of subject matter jurisdiction, "supplemental jurisdiction can *never* exist (emphasis in original)." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996). To hold otherwise would result in this Court attempting to exercise supplemental jurisdiction in a manner that is prohibited by Article III of the Constitution. *See Musson Theatrical*, 89 F.3d at 1255 ("a federal court may not exercise supplemental jurisdiction in a case when the original federal claim would not have 'substance sufficient to confer subject matter jurisdiction on the court.'" *Id.* (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

Based on the foregoing, this Court is without authority to resolve Plaintiff's state law statutory claims[4] or Trinity Financial's counterclaim seeking foreclosure on the Second Mortgage.

---

December 2022. Docs. 27, 41. The parties finished briefing the summary judgment issues in February 2023. Doc. 42. The Parties may be thinking that this Court should resolve the remaining state claims and counterclaim and the pending motion for summary judgment related to those claims, given the time that has elapsed and potential authority of the Court to do so under *Taylor v. First Am. Bank-Wayne*, 973 F.2d 1284, 1288 (6th Cir. 1992). In *Taylor*, the Sixth Circuit stated that cases may tilt towards a district court continuing to exercise supplemental jurisdiction if (1) the case has been on the court's docket for a while; (2) discovery has closed; (3) summary judgment motions have been filed and are ripe for review; or (4) the district court was familiar with the facts of the case and invested significant time in the litigation. However, the Sixth Circuit has also made clear that "a close look at precedent indicates that not all 'pretrial dismissals' affect supplemental claims in the same manner." *Musson Theatrical*, 89 F.3d at 1254–55. As this Court earlier noted, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); III.A., *supra*. And "[w]hether a party has standing is an issue of the court's subject matter jurisdiction." *Lyshe*, 854 F.3d at 857.

[4] Plaintiff likely also lacks standing to assert the state statutory claims included in her Complaint. Plaintiff's claims under Ohio's RMLA and OCSPA are based on the same allegations used to seek redress for the alleged federal violations. *See Crawford v. L. Offs. of Brett*

12

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** the Motion for Summary Judgment of Defendant (Doc. 37) and **DISMISSES WITH PREJUDICE** Counts One, Two, and Three of Plaintiff's Complaint (Doc. 1). The Court **ORDERS** the clerk to **ENTER JUDGMENT** and **TERMINATE** this matter from the docket.

**SO ORDERED**

July 18, 2024

Jeffery P. Hopkins
United States District Judge

---

*Borland*, 2024 U.S. Dist. LEXIS 6786, at *10 ("[Plaintiff's] allegations that Defendants violated the FDCPA therefore do not give rise to an injury in fact. The same goes for his allegations that Defendants violated [the] FCRA, *Ohio Revised Code Chapter 1349*, *and the OCSPA*—those alleged statutory violations, standing alone, also do not support Article III standing (emphasis added)."